UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMMY LORENE AKERS, | ) |
| | ) CASE NO. C12-1371-RSM-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting | ) DISABILITY APPEAL |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Tammy Lorene Akers proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be reversed and remanded for further proceedings.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1963.[2] She graduated from high school and completed one year of college, and has previously worked as an in-home caregiver. (AR 305, 310.)

On July 21, 2010, Plaintiff filed applications for DIB and SSI.[3] (AR 251-52, 255-59.) Those applications were denied initially and on reconsideration, and Plaintiff timely requested a hearing. (AR 138-45, 150-52, 158-59.)

On October 24, 2011, ALJ Larry Kennedy held a hearing, taking testimony from Plaintiff. (AR 44-89.) On February 14, 2012, the ALJ issued a decision finding Plaintiff not disabled. (AR 18-35.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on June 12, 2012 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

//

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[3] Plaintiff's previous DIB applications, filed on October 15, 2007, and June 5, 2009, were denied. (AR 129-31, 133-37, 235-36, 247-48.) The June 5, 2009 application was not denied until July 23, 2009, which was less than a year before Plaintiff's current application was filed. (AR 18.) Though Plaintiff argues that the ALJ should have reopened the June 5, 2009 application, the ALJ's decision not to do so is purely discretionary and the decision is not subject to judicial review. *See Taylor v. Heckler*, 765 F.2d 872, 877 (9th Cir. 1985). Furthermore, though Plaintiff contends that reopening is appropriate to allow the "entire period from August 6, 2007" to be considered, the ALJ indicated that the relevant period for this application began on August 6, 2007, as the alleged onset date, so it is unclear how reopening would have made an appreciable difference. *See* AR 20.

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since August 6, 2007, the alleged onset date. (AR 20.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that Plaintiff's obesity, degenerative disc disease of the lumbar spine, psoriatic arthritis, diabetes mellitus, fibromyalgia, and carpal tunnel syndrome were severe impairments. (AR 21-26.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not individually or in combination meet or equal the criteria of a listed impairment. (AR 26.)

If a claimant's impairments do not meet or equal a listing, the ALJ must assess the claimant's residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing less than a full range of light work, with the following exertional limitations: she can lift and/or carry up to 10 pounds frequently; stand and/or walk 2 of 8 hours; she has no sitting restrictions, assuming normal breaks. She can push or pull up to 10 pounds. She can frequently balance, and can occasionally stoop, kneel, crouch, and climb ramps or stairs. She cannot crawl or climb ladders, ropes, or scaffolding, but can frequently finger and handle bilaterally. She should avoid concentrated exposure to wetness, humidity, vibration, hazards, or extreme temperatures. (AR 26.) With that assessment, the ALJ found Plaintiff unable to perform her past relevant work as a caregiver. (AR 33.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found Plaintiff capable of performing representative occupations such as telephone solicitor, appointment clerk, sorter, and food checker. (AR 34.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) failing to include peripheral neuropathy as a severe impairment step two[4]; (2) discounting the medical opinions of physicians Drs. Savage, Obillo, and Tocher; (3) discounting Plaintiff's credibility; and (4) finding at step five that Plaintiff can perform representative jobs with a Specific Vocational Preparation level of 3, despite her lack of transferable skills. The Commissioner contends that the ALJ's decision is free of harmful error and supported by substantial evidence in the record.

//

---

[4] Though Plaintiff's opening brief also assigned error to the ALJ's failure to include carpal tunnel syndrome as a severe impairment, Plaintiff conceded on reply that the ALJ *did* include carpal tunnel syndrome as a severe impairment at step two. *See* Dkt. 14 at 4 n.1.

REPORT AND RECOMMENDATION
PAGE -4

<u>Peripheral Neuropathy</u>

Plaintiff contends that the ALJ should have included peripheral neuropathy as a severe impairment at step two. The ALJ briefly referred to neuropathy as a severe impairment (AR 21), but also cited evidence that Plaintiff's peripheral neuropathy was improved with medication (AR 29). The ALJ also connected Plaintiff's neuropathy symptoms to her diabetes mellitus. (AR 29.) Thus, according to the Commissioner, because the ALJ discussed Plaintiff's peripheral neuropathy, and considered the limitations associated with those symptoms when considering other severe impairments, any error in omitting peripheral neuropathy at step two was harmless.

The Court agrees. Plaintiff has failed to show that any particular functional limitation was overlooked as a result of the ALJ analyzing her neuropathy as a component of her other impairments rather than as a separate severe impairment, but simply asserts that the ALJ's error lies in his failure to "determine whether [peripheral neuropathy] is severe or non-severe or whether it is not a medically diagnosed impairment at all but rather a symptom of Ms. Akers' other impairments." Dkt. 14 at 5. But even if Plaintiff is correct that the ALJ erred in failing to list peripheral neuropathy at step two, the error was harmless because the ALJ's decision reflects a consideration of limitations caused by Plaintiff's peripheral neuropathy. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Accordingly, Plaintiff cannot prevail on this assignment of error.

<u>Credibility</u>

The ALJ provided a number of reasons to discount Plaintiff's credibility, and Plaintiff argues that these reasons were not clear and convincing. *See Lingenfelter v. Astrue*, 504 F.3d

1028, 1036 (9th Cir. 2007) (requiring an ALJ to provide "clear and convincing reasons to reject a claimant's testimony" absent evidence of malingering).

Specifically, Plaintiff argues that though the ALJ argued that Plaintiff made inconsistent reports regarding the severity of her symptoms, the ALJ overlooked Plaintiff's consistent reporting of fibromyalgia symptoms. Dkt. 12 at 16. Plaintiff also argues that the ALJ's finding that objective medical evidence failed to support her allegations overlooked the fact that she was eventually diagnosed with fibromyalgia after other diagnoses were ruled out. *Id.* Finally, Plaintiff contends that the ALJ erred in finding that her daily activities undermined her allegations, because none of the activities she reported completing — such as attending church, driving, reading all day long, or traveling to California to visit her sister — indicate that she can perform work duties or establish that she is less limited than alleged. Dkt. 12 at 17.

Plaintiff's arguments as to this assignment of error lack specificity and fail to address the full spectrum of reasons provided by the ALJ as support for his adverse credibility finding. At least three of the ALJ's reasons for discounting Plaintiff's credibility — her worsening diabetes-related symptoms during periods when she failed to consistently comply with recommended diet and treatment (AR 29), her request for and use of a walker without clear medical indication (AR 29-30), and her focus on obtaining Social Security benefits rather than improving her symptoms (AR 30) — were not addressed by Plaintiff, and thereby remain unchallenged. These are appropriate bases for discounting a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th

Cir.1992).

Furthermore, Plaintiff's attempt to undercut the ALJ's other reasons is unavailing because Plaintiff merely points to isolated pieces of evidence that are inconsistent with the ALJ's reasons, but does not establish that the ALJ's interpretation of the evidence is unreasonable or not supported by substantial evidence. *See* Dkt. 12 at 15-17; Dkt. 14 at 8-9. Accordingly, Plaintiff has failed to sufficiently identify an error in the ALJ's lengthy discussion of her credibility (AR 27-31), and thus this assignment of error fails.

## Medical Opinions

Plaintiff next contends that the ALJ erred in discounting the opinions of physicians Emily Savage, M.D.; Kristin Obillo, M.D.; and Thomas Tocher, M.D. All three of these doctors treated Plaintiff and rendered opinions regarding Plaintiff's functional abilities and limitations. *See* AR 842-43, 974-79 (Dr. Savage); AR 785-790, 980-83 (Dr. Obillo); AR 993-1008 (Dr. Tocher).

The ALJ discounted all three of these doctors' opinions for essentially the same reasons: (1) the opinions were based primarily on Plaintiff's non-credible self-report, and (2) the opinions were inconsistent with the doctors' objective findings. (AR 31-33.) Plaintiff contends that neither of these reasons is specific or legitimate, and thus legally insufficient. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (requiring an ALJ to provide specific and legitimate reasons supported by substantial evidence to reject a treating or examining physician's opinion).

For the reasons explained in the previous section, the ALJ properly discounted Plaintiff's credibility, and reliance on a claimant's non-credible self-report is a specific and

legitimate reason to discount a medical opinion. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that [the claimant's] description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). The ALJ's other reason to discount the medical opinions is also valid, because the ALJ identified specific findings in the record that are inconsistent with the doctors' opinions. *See* AR 31-33 (citing AR 411-16, 422-38, 447-78, 486-544, 767-921, 843-44, 912-18, 974-79, 980-1026, 1056-68). Inconsistency with objective medical evidence is a valid reason to discount a medical opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Though Plaintiff claims that there is other evidence in the medical record that *is* consistent with the doctors' opinions, she has not shown that the ALJ's inferences from the record were either unreasonable or do not amount to substantial evidence. Thus, Plaintiff's assignment of error fails.

Step Five

In light of Plaintiff's RFC, and the testimony of the vocational expert, the ALJ found that Plaintiff could perform the requirements of four representative jobs, all of which are defined by the Dictionary of Occupational Titles to have an SVP level of 3, which means they are semi-skilled jobs. (AR 34.) The vocational expert testified at the administrative hearing that in light of Plaintiff's JobCorps experience (which included clerical training), he believed that Plaintiff could perform jobs with an SVP of 3 involving "office work," even though he acknowledged her work history had been in "primarily unskilled" jobs. (AR 83-85.) Plaintiff's JobCorps training occurred in 1984. (AR 310.)

Plaintiff contends that the ALJ erred in finding that she could transition to semi-skilled

REPORT AND RECOMMENDATION
PAGE -8

work, given that she had performed only unskilled work in the past and her high school education and JobCorps training were remote in time. Dkt. 14 at 3. The Commissioner distances herself from the vocational expert's testimony, contending that the ALJ did not actually rely on the testimony regarding Plaintiff's transferable JobCorps skills; according to the Commissioner, because the ALJ did not include any mental limitations in Plaintiff's RFC or in the hypothetical posed to the vocational expert, the ALJ did not err in finding that Plaintiff could perform semi-skilled work. Dkt. 13 at 19.

The Commissioner's argument ignores the ALJ's explicit finding that Plaintiff's past relevant work was unskilled, and that therefore "[t]ransferability of job skills is not an issue in this case." (AR 34.) Social Security Administration rulings and regulations require that a claimant must have transferable skills or recent education in order to perform SVP-3 jobs. *See Steward v. Barnhart*, 44 Fed. Appx. 151, 152-53 (9th Cir. 2002) (citing Social Security Ruling (SSR) 00-49, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("semi-skilled work corresponds to an SVP of 3-4"); SSR 83-10, 1983 WL 31251, at *3 (1983) ("RFC alone never establishes the capability for skilled or semiskilled work. Ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work.")).

Because the ALJ did not identify any of Plaintiff's transferable skills and suggested that she did not possess any in light of her unskilled work history, and because Plaintiff's most recent education and training occurred in the early to mid-1980s, the ALJ could not rely on the vocational expert's testimony that Plaintiff can perform semiskilled work. The

vocational expert's testimony was the only support for the ALJ's step-five findings, and therefore those findings are in error. A remand is appropriate under these circumstances, to allow for further development of the record regarding the availability of unskilled work that Plaintiff could perform. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (indicating that in general "remand is appropriate if enhancement of the record would be useful").

## **CONCLUSION**

For the reasons set forth above, this matter should be REVERSED and REMANDED for further administrative proceedings. On remand, the ALJ should reconsider his step-five findings and obtain additional vocational expert testimony, if necessary.

DATED this 12th day of March, 2013.

Mary Alice Theiler
United States Magistrate Judge